# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| BROOKFIELD WHITE PINE HYDRO LLC, | ) ) ) ) | |
| Petitioner, | ) ) | No. 23-1075 |
| v. | ) ) | |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) ) ) | |
| Respondent. | ) ) | |

## PETITION FOR REVIEW

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), Federal Rule of Appellate Procedure 15(a), and D.C. Circuit Rule 15(a), Brookfield White Pine Hydro LLC ("Brookfield White Pine") hereby petitions this Court for review of the following orders issued by the Federal Energy Regulatory Commission ("FERC"), Respondent:

- *Brookfield White Pine Hydro LLC*, Notice of Denial of Water Quality Certification, Project No. 2322-069 (issued November 22, 2022) ("Notice of Denial");

- *Brookfield White Pine Hydro LLC*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Project No. 2322-073, 182 FERC ¶ 62,025 (issued January 17, 2023) ("Rehearing Denial"); and

- *Brookfield White Pine Hydro LLC*, Order Addressing Arguments Raised on Rehearing, Project No. 2322-073, 182 FERC ¶ 61,169 (issued March 17, 2023) ("Rehearing Order").

A copy of the Notice of Denial is attached as Attachment A, a copy of the Rehearing Denial is attached as Attachment B, and a copy of the Rehearing Order is attached as Attachment C.

Brookfield White Pine holds a license from FERC for the Shawmut Hydroelectric Project ("Project") on the lower Kennebec River in Maine. The Project is undergoing relicensing at FERC. Before FERC can issue a new license for the Project, Brookfield White Pine must obtain a water quality certification from the Maine Department of Environmental Protection ("Maine DEP"), or waiver thereof, pursuant to Section 401 of the Clean Water Act ("CWA"), 33 U.S.C. § 1341(a). Brookfield White Pine filed an application for water quality certification with Maine DEP on October 18, 2021, which Maine DEP denied on October 12, 2022.

The CWA regulations require a state agency's denial of a request for water quality certification to include specific information. 40 C.F.R. § 121.7(e)(1). The regulations further require the relevant federal agency—here, FERC—to determine whether the state certifying authority's denial satisfies the requirements of the regulations. *Id.* If the denial does not include the required information, the federal agency must provide notice of waiver of the certification requirement. *Id.* § 121.9(c).

The Notice of Denial is FERC's determination that Maine DEP's denial of Brookfield White Pine's application for water quality certification satisfied the requirements of 40 C.F.R. § 121.7(e)(1).  Brookfield White Pine timely sought rehearing of the Notice of Denial on December 16, 2022 under 16 U.S.C. § 825*l*(a). A copy of Brookfield White Pine's request for rehearing is attached as Attachment D.

The Rehearing Denial indicated that in the absence of FERC action within 30 days from the date a request for rehearing is filed, the request for rehearing may be deemed to be denied by operation of law under 16 U.S.C. § 825*l*(a), 18 C.F.R. § 385.713, and this Court's decision in *Allegheny Defense Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020).  The Rehearing Denial also stated that FERC would address Brookfield White Pine's request for rehearing in a future order.  FERC did so in the Rehearing Order, rejecting Brookfield White Pine's arguments raised in its request for rehearing and sustaining the Notice of Denial.  FERC Commissioner Danly dissented.

Brookfield White Pine contends that, in issuing the Notice of Denial, Rehearing Denial, and Rehearing Order, FERC erred in determining that Maine DEP's denial of Brookfield White Pine's application for water quality certification met the requirements of 40 C.F.R. § 121.7(e)(1).  Brookfield White Pine is aggrieved

by FERC's orders which, by failing to find waiver of the water quality certification

requirement for the Project, delay the relicensing process.

Respectfully submitted,

/s/ Julia S. Wood

Matthew S. Warner                      Julia S. Wood
PRETI FLAHERTY BELIVEAU &              Sharon L. White
PACHIOS LLP                            ROCK CREEK ENERGY GROUP
One City Center, P.O. Box 9546         1 Thomas Circle, NW, Suite 700
Portland, Maine 04112                  Washington, DC 20005
(207) 791-3000                         (202) 998-2770
mwarner@preti.com                      jwood@rockcreekenergygroup.com
                                       swhite@rockcreekenergygroup.com

                                       *Counsel for Brookfield White Pine*
                                       *Hydro LLC*

Dated: March 20, 2023

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| BROOKFIELD WHITE PINE HYDRO LLC, | ) ) ) ) |
| Petitioner, | ) No. _____ |
| v. | ) ) |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) ) ) |
| Respondent. | ) ) |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, Brookfield White Pine Hydro LLC ("Brookfield White Pine") provides this Corporate Disclosure Statement.

Brookfield White Pine is a Delaware limited liability corporation that is directly owned by White Pine Hydro, LLC ("White Pine Hydro"). White Pine Hydro is indirectly owned by a private equity fund (BIF II) (~49.9%) and Brookfield Renewable Corporation (~50.1%). Affiliates of Brookfield Corporation manage and control BIF II as general partner and pursuant to management agreements.[1]

---

[1] The private equity investors in BIF II (Private Equity Investors) are passive investors with limited voting rights. No individual Private Equity Investor (together with its associate or affiliate companies) holds a 10% or greater voting interest in BIF II. The Private Equity Investors are passive investors that (i) cannot take part

Brookfield Renewable Corporation is a corporation organized under the laws of British Columbia, Canada. Brookfield Renewable Corporation has two classes of voting securities, Class A exchangeable subordinate voting shares ("BEPC Exchangeable Shares") and Class B shares. By their terms, the BEPC Exchangeable Shares in the aggregate represent 25 percent of Brookfield Renewable Corporation's voting securities regardless of the number of BEPC Exchangeable Shares outstanding from time to time. Brookfield Renewable Corporation's Class B shares in the aggregate represent 75 percent of its voting securities regardless of the number of Class B shares outstanding from time to time.

Brookfield Renewable Partners, L.P., a Bermuda limited partnership, indirectly owns 100 percent of Brookfield Renewable Corporation's Class B shares.[2] The non-voting limited partnership interests in Brookfield Renewable Partners ("BEP LP Units") are publicly traded on the Toronto Stock Exchange and New York

---

in the management or control of the activities of BIF II; (ii) do not have authority to act or bind BIF II; (iii) cannot manage or control the day to day operations of BIF II; (iv) are not generally entitled to vote on matters related to BIF II and only have limited consent rights in respect of material amendments to the limited partnership agreements that adversely affect the Private Equity Investors, and with respect to a sale of all or substantially all of the assets held by BIF II; and (v) other than in extremely limited circumstances requiring cause, cannot remove the general partner of BIF II.

[2]   Brookfield Renewable Partners also indirectly owns 100 percent of Brookfield Renewable Corporation's Class C shares, which are non-voting except in limited circumstances prescribed by applicable law.

Stock Exchange, under the symbols BEP.UN and BEP, respectively. Brookfield Renewable Power Inc., a wholly owned indirect subsidiary of Brookfield Corporation (f/k/a Brookfield Asset Management Inc.), indirectly owns the 0.01 percent general partnership interest in Brookfield Renewable Partners and has sole responsibility and authority for the management and control of Brookfield Renewable Partners. The BEP LP Units are held by Brookfield Corporation (approximately 25 percent indirectly through wholly owned subsidiaries) and public investors (approximately 75 percent).[3] No individual public investor (in aggregate together with its associate or affiliate companies) holds 10 percent or more of the BEP LP Units.

The BEPC Exchangeable Shares are publicly traded on the Toronto Stock Exchange and New York Stock Exchange under the symbol BEPC.[4] A portion of

---

[3]  As of March 17, 2023, on a "fully-exchanged" basis (*i.e.*, assuming exchange of 100 percent of all outstanding securities convertible for BEP LP Units), Brookfield Corporation would indirectly beneficially own approximately 48 percent of the BEP LP Units, and the public would own the remaining approximately 52 percent. If only such convertible securities owned by Brookfield Corporation and its affiliates, but not public shareholders, were converted into BEP LP Units, then Brookfield Corporation would indirectly beneficially own approximately 59.9 percent of the BEP LP Units, and the public would own the remaining approximately 40.1 percent.

[4]  Each BEPC Exchangeable Share is exchangeable at the option of the holder for one BEP LP Unit (subject to adjustment to reflect certain capital events) or its cash equivalent (the form of payment to be determined at the election of Brookfield Renewable Corporation). Brookfield Renewable Partners may elect to satisfy its exchange obligation by acquiring such tendered BEPC Exchangeable Shares for an equivalent number of BEP LP Units (subject to adjustment to reflect certain capital

the BEPC Exchangeable Shares is held by public investors, none of which holds (in aggregate together with its associate or affiliate companies) 10 percent or more of the outstanding voting securities of Brookfield Renewable Corporation. Brookfield Corporation indirectly owns the remaining BEPC Exchangeable Shares, which represent approximately 26 percent of the outstanding BEPC Exchangeable shares as of March 20, 2023.

Brookfield Corporation is an Ontario corporation with its principal place of business in Toronto, Ontario, Canada. The outstanding Class A shares of Brookfield Corporation are publicly traded on the Toronto Stock Exchange and New York Stock Exchange under the symbol BN. The outstanding Class B shares of Brookfield Corporation are held by the "BAM Partnership," a trust constituted under the laws of the Province of Ontario, the corporate trustee of which (the "Trustee") is held, directly or indirectly, by certain longstanding individual stockholders of Brookfield Corporation. Two corporations formed under the laws of Bermuda and the Province of Ontario, respectively, each hold 33.3 percent of the voting interests in the Trustee. The first corporation is wholly owned, directly or indirectly, by Bruce Flatt, a private individual (together with the first corporation, "Flatt"). The second corporation is wholly owned, directly or indirectly, by Jack Cockwell, also a private individual

---

events) or its cash equivalent (the form of payment to be determined at the election of Brookfield Renewable Partners).

4

(together with the second corporation, "Cockwell").  No other person or entity owns or controls (directly or indirectly and together with its affiliates) a 10 percent or greater voting interest in the Trustee.  The Trustee votes the Class B Shares of the BAM Partnership with no single entity or individual controlling the BAM Partnership.  Aside from the BAM Partnership, the Trustee, Flatt, and Cockwell, no person or entity currently owns or exercises control or direction over, directly or indirectly, a 10 percent or greater voting interest in Brookfield Corporation.

Respectfully submitted,

Matthew S. Warner
PRETI FLAHERTY BELIVEAU &
PACHIOS LLP
One City Center, P.O. Box 9546
Portland, Maine 04112
(207) 791-3000
mwarner@preti.com

*/s/ Julia S. Wood*
Julia S. Wood
Sharon L. White
ROCK CREEK ENERGY GROUP
1 Thomas Circle, NW, Suite 700
Washington, DC 20005
(202) 998-2770
jwood@rockcreekenergygroup.com
swhite@rockcreekenergygroup.com

*Counsel for Brookfield White Pine Hydro LLC*

Dated: March 20, 2023

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 15(c) and Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that I have on this day served a copy of the foregoing documents upon the Solicitor of the Federal Energy Regulatory Commission ("FERC") and the FERC Secretary at the addresses provided below, and upon each person designated on the official service list maintained by FERC for Project No. 2322, which service list is attached to this Petition as Attachment E.

Robert H. Solomon, Solicitor
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426

Kimberly D. Bose, Secretary
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426

*/s/ Julia S. Wood*
Julia S. Wood
ROCK CREEK ENERGY GROUP
1 Thomas Circle, NW, Suite 700
Washington, DC 20005
(202) 998-2770
jwood@rockcreekenergygroup.com

Dated: March 20, 2023

# Attachment A

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Brookfield White Pine Hydro LLC                    Project No. 2322-069

## NOTICE OF DENIAL OF WATER QUALITY CERTIFICATION

(November 22, 2022)

On January 31, 2020, Brookfield White Pine Hydro LLC (Brookfield) filed an application for a new license for the Shawmut Hydroelectric Project (project) in the above captioned docket.  Brookfield filed with the Maine Department of Environmental Protection (Maine DEP) a request for water quality certification for the project under section 401(a)(1) of the Clean Water Act on October 18, 2021.  On October 12, 2022, the Maine DEP denied certification for the project.  Pursuant to 40 C.F.R. § 121.8, we are providing notice that Maine DEP's denial satisfies the requirements of 40 C.F.R. § 121.7(e).


Kimberly D. Bose,
Secretary.

# Attachment B

182 FERC ¶ 62,025
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Brookfield White Pine Hydro LLC                    Project No. 2322-073

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(January 17, 2023)

Rehearing has been timely requested of the Commission's letter order issued on November 22, 2022, in this proceeding by the Director of the Division of Hydropower Licensing, Office of Energy Projects.  In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied.  16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2021); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section.  As also provided in 16 U.S.C. § 825*l*(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Debbie-Anne A. Reese,
Deputy Secretary.

# Attachment C

182 FERC ¶ 61,169
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Acting Chairman;
James P. Danly, Allison Clements,
and Mark C. Christie.

| | |
|---|---|
| Brookfield White Pine Hydro LLC | Project No.  2322-073 |

ORDER ADDRESSING ARGUMENTS RAISED ON REHEARING

(Issued March 17, 2023)

1.       On November 22, 2022, the Secretary of the Commission provided notice that the Maine Department of Environmental Protection's (Maine DEP) denial of Brookfield White Pine Hydro LLC's (BWPH) request for water quality certification (certification) under section 401(a)(1) of the Clean Water Act (CWA) for the Shawmut Hydroelectric Project No. 2322 satisfies the requirements of section 121.7(e)(1) of the Environmental Protection Agency's (EPA) regulations implementing the CWA.  On December 16, 2022, BWPH filed a timely request for rehearing of the Secretary's Notice.

2.       Pursuant to *Allegheny Defense Project v. FERC*,[1] the rehearing request filed in this proceeding may be deemed denied by operation of law.  However, as permitted by section 313(a) of the Federal Power Act,[2] we are modifying the discussion in the Notice and continue to reach the same result in this proceeding, as discussed below.[3]

---

[1] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[2] 16 U.S.C. § 825*l*(a) ("Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.").

[3] *Allegheny Def. Project*, 964 F.3d at 16-17.  The Commission is not changing the outcome of the Notice.  *See Smith Lake Improvement & Stakeholders Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

## I.    **Background**

3.      On January 31, 2020, BWPH filed, pursuant to Part I of the Federal Power Act (FPA),[4] an application for a new license for the continued operation and maintenance of its Shawmut Hydroelectric Project No. 2322.  The project, located on the Kennebec River in the towns of Skowhegan, Fairfield, Clinton, and Benton in Kennebec and Somerset Counties, Maine, was issued its current license on January 5, 1981, for a term of 40 years.[5]

4.      Under section 401(a)(1) of the CWA, the Commission may not issue a license authorizing the construction or operation of a hydroelectric project unless the state water quality certifying authority has either issued a certification for the project or has waived certification, which it can do either affirmatively or by failing to act on a request for certification within a reasonable period of time, not to exceed one year.[6]

5.      On June 1, 2020, EPA issued a "Clean Water Act Section 401 Certification Rule" (Final Rule) that revised its regulations under 40 C.F.R. Part 121 by updating and clarifying the requirements for water quality certification under section 401 of the CWA.[7] The Final Rule was effective on September 11, 2020, and applies prospectively to certification requests submitted on or after the effective date.[8]

6.      Among other things, the Final Rule clarifies the certification requirements and procedures.[9]  Under the Final Rule, the certifying authority may take one of four actions on a certification application within a reasonable period of time not to exceed one year:

---

[4] 16 U.S.C. §§ 791(a)-825(r).

[5] *Cent. Me. Power Co.*, 14 FERC ¶ 62,004 (1981).  On December 11, 2018, Commission staff approved a request by BWPH to extend the license term for the project by one year to January 31, 2022.  *Brookfield White Pine Hydro, LLC*, 165 FERC ¶ 62,152 (2018).  Since then, the project has operated under an annual license issued by the Commission.  Secretary February 10, 2022 Notice of Authorization for Continued Project Operation.

[6] 33 U.S.C. § 1341(a)(1).

[7] 85 Fed. Reg. 42,210 (July 13, 2020) (codified at 40 C.F.R. pt. 121 (2022)).  .

[8] 85 Fed. Reg. 42,210.

[9] *Id.*

grant, grant with conditions, deny, or expressly waive.[10]  A denial of certification by the certifying authority must be in writing and include the following supporting information set forth in section 121.7(e)(1) of EPA's certification regulations:

> (i) [t]he specific water quality requirements with which the discharge will not comply; (ii) [a] statement explaining why the discharge will not comply with the identified water quality requirements; and (iii) [i]f the denial is due to insufficient information, the specific water quality data or information, if any, that would be needed to assure that the discharge from the proposed project will comply with water quality requirements.[11]

7.    Section 121.8(b) of the revised certification regulations requires federal agencies to verify that a certification denial includes the information required in section 121.7(e)(1).[12]  According to EPA, the federal agency's verification is an entirely procedural step, limited to determining whether the certification action was taken in accordance with procedural requirements and whether the action includes all the required information.[13]  If the denial satisfies the requirements of section 121.7(e)(1), the federal agency must provide written notice of the denial to the certifying authority and the applicant.[14]  If denial does not satisfy the requirements of section 121.7(e)(1), then the certifying authority has waived certification and the federal agency must issue a notice of waiver of the certification.[15]

8.    On August 28, 2020, BWPH filed an application for certification for the relicensing of the Shawmut Project with Maine DEP.[16]  On August 11, 2021, Maine DEP provided BWPH with a draft order denying certification, which prompted BWPH to

---

[10] 40 C.F.R. § 121.7(e)(1).(2022)

[11] *Id.* § 121.7(e)(1)(i)-(iii).

[12] 40 C.F.R. § 121.8(b). (2022).

[13] 85 Fed. Reg. at 42,267.

[14] *Id.*

[15] *Id.*

[16] BWPH September 3, 2020 Notification of Certification Application.  Maine DEP received the application on August 28, 2020.  *Id.* at 24.

withdraw its certification application on August 18, 2021, and reapply for certification with an updated application on October 15, 2021.[17]

9.     On October 12, 2022, Maine DEP denied without prejudice BWPH's second certification application, stating that BWPH has not provided sufficient information.[18] Maine DEP stated that it was aware of additional forthcoming information relevant to the certification,[19] specifically new information on the project's effects on Atlantic salmon that had been referenced in filings by the National Marine Fisheries Service (NMFS)[20] and Commission staff[21] but not provided to Maine DEP and that would be addressed in NMFS's forthcoming Biological Opinion.[22]  In addition, Maine DEP noted that Commission staff is preparing an Environmental Impact Statement (EIS) to analyze the combined effects of relicensing the Shawmut Project and of amending the licenses for the Shawmut, Weston, Hydro-Kennebec, and Lockwood Projects with respect to fisheries resources, which will be relevant to its review of certification for the project.[23]

10.     Maine DEP also based its denial on the potential for significant material changes to BWPH's relicensing application, which could affect its review.[24]  Maine DEP stated that, for example, BWPH supplemented its certification application on September 22, 2022, to include additional fish passage measures and has acknowledged that NMFS may require further changes concerning fish passage.[25]

---

[17] BWPH October 15, 2021 Certification Application.  Maine DEP received the new application on October 18, 2021.  BWPH October 20, 2021 Receipt of Certification Application at 3.

[18] Maine DEP October 12, 2022 Denial Without Prejudice of Certification at 1 (Denial).  Along with a copy of its denial, Maine DEP filed with the Commission a letter to BWPH summarizing the basis for its denial.

[19] *Id.*

[20] NMFS July 14, 2022 Extension of Time Request.

[21] Commission Staff August 8, 2022 Letter Granting Extension of Time.

[22] Denial at 2.

[23] *Id.*

[24] *Id.*

[25] *Id.* at 2 & n.2.

11.    On November 7, 2022, BWPH filed with the Commission a request for determination that Maine DEP's denial failed to satisfy the criteria of section 121.7(e)(1) of EPA's certification regulations and, therefore, that certification has been waived.[26] BWPH disputed Maine DEP's assertion that new information relevant to certification is forthcoming and that BWPH is continuing to develop its relicensing proposal.[27]  BWPH also argued that "general references to potential new sources of information that may or may not become available in the future and may be of interest" do not satisfy the requirement of section 121.7(e)(1)(iii) that Maine DEP specify the water quality data or information needed to act on BWPH's request for certification.[28]

12.    On November 22, 2022, the Secretary of the Commission issued a Notice, pursuant to section 121.8(b) of EPA's certification regulations, that Maine DEP had denied certification for the project and that Maine DEP's denial satisfies the requirements of section 121.7(e)(1).  Concurrently, Commission staff issued a letter to BWPH explaining the next steps as a result of the denial.[29]

## II.    <u>Discussion</u>

13.    On rehearing, BWPH argues that the Notice violated the CWA and the Administrative Procedure Act.[30]  Specifically, BWPH argues the Commission erred by:

---

[26] BWPH November 7, 2022 Certification Determination Request at 1.

[27] *Id.* at 5.

[28] *Id.*

[29] Commission Staff November 22, 2022 Letter.  Staff's letter informed BWPH that, after certification is denied, staff decides, on a case-by-case basis, whether to proceed with processing a license application. *Id.* at 2.  Staff may dismiss the license application 90 days after certification is denied.  If the applicant notifies the Commission within the 90-day period that it has filed a timely appeal of the denial with the certifying agency and/or refiled its request, as BWPH has done, staff will keep the license application on file.

[30] BWPH December 16, 2022 Rehearing Request at 9-10 (Rehearing Request) (citing 5 U.S.C. § 706(2)(A); 40 C.F.R. §§ 121.7(e), 121.8(b)).

(1) finding that Maine DEP's denial satisfied the requirements of section 121.7(e)(1);[31] and (2) failing to provide an explanation for its determination.[32]

### A.    Maine DEP's Denial Satisfied Section 121.7(e)(1)

14.    BWPH argues that the determination in the Notice that Maine DEP's denial of BWPH's certification application satisfies the requirements of section 121.7(e)(1) was "unsupported by substantial evidence" and, therefore, arbitrary and capricious.[33] Specifically, BWPH asserts that Maine DEP's denial did not, as required by section 121.7(e)(1)(i), cite any specific state water quality requirements or laws that BWPH's certification application did not satisfy, nor did it explain why BWPH's certification application would not satisfy state water quality requirements, as required by section 121.7(e)(1)(ii).[34]  BWPH further argues that, while Maine DEP based its denial on a lack of necessary information, it did not, as required by section 121.7(e)(1)(iii), identify what specific water quality data or information was needed or how such information would be used.[35]

15.    We acknowledge the Final Rule's use of "and" requiring certification denials to include all three elements listed in section 121.7(e)(1)(i)-(iii).  However, the Final Rule affirms that under section 121.7(e)(1)(iii) insufficient information can be a basis for denial[36] and explains that if a "denial meets the procedural requirements of section 401

---

[31] *Id.* at 10-11.

[32] *Id.* at 12-13.

[33] *Id.* at 10-11.

[34] Rehearing Request at 10.

[35] *Id.*

[36] 85 Fed. Reg. at 42,265 ("Some commenters asserted that the proposed rule would prohibit certifying authorities from denying certification based on a lack of information sufficient to grant certification.  The EPA disagrees with these commenters. Indeed, by requiring that 'if the denial is due to insufficient information, the denial must describe the specific water quality data or information, if any, that would be needed to assure that the discharge from the proposed project will comply with water quality requirements,' the final rule reaffirms and clarifies that insufficient information about the proposed project can be a basis for a certification denial.  If the certifying authority determines that there is no specific data or information that would allow the certifying authority to determine that the discharge will comply with water quality requirements, it

and this final rule, the federal agency must implement the certifying authority's action . . . ."[37]  Moreover, the courts have held that regulations must be construed so that they make sense.[38]

16.    Where, as here, the state based denial on a lack of information, the certifying authority, by providing the information specified in section 121.7(e)(1)(iii), i.e., identifying the water quality data or information needed to assure the project will comply with water quality requirements, complies with section 121.7(e)(1)(i) and (ii).[39]

17.    We find that Maine DEP's denial meets the procedural requirements of section 121.7(e)(1)(iii).  Maine DEP identified as necessary for its review new information on the project's effects on Atlantic salmon that it has not been provided.[40]  Further, Maine DEP stated that it expects the project proposal will be modified by BWPH or NMFS given BWPH's recent addition of supplementary fish passage measures to its request for certification.[41]

18.    In the absence of information providing details about the project proposal, it would not be possible for an agency to determine which, if any, water quality requirements the discharge will not comply with or to provide an explanation of how the discharge will not comply.  Only when the state has sufficient information can it make

---

should indicate as such and provide the basis for the determination in its written decision to deny certification.").

[37] *Id.* at 42,268.

[38] *See, e.g.*, *Posey v. Heckler,* 812 F.2d 1408, at *3 (6th Cir. 1987); *cf. Griffin v. Oceanic Contractors*, 458 U.S. 564, 575 (1982) (finding statutes should be construed to make sense).

[39] *See* 40 C.F.R. § 121.7(e)(1)(iii).

[40] Denial at 2.  In addition, Maine DEP's denial incorporates by reference its August 11, 2021 draft denial of certification, which provides further details regarding the state's concerns related to the project's effects on habitat characteristics and aquatic life criteria, and its ability to meet state water quality standards.  *Id.* at 1 n.1; Maine DEP December 5, 2022 Draft Denial of Certification.

[41] *See* Denial at 2 n.2.  Maine DEP's assertion is supported by the fact that on September 21, 2022, BWPH filed with the Commission supplemental information on its relicensing application, including a proposal to add measures to minimize or mitigate the effects of delayed mortality and improve the downstream survival of juvenile and adult Atlantic salmon at the project.  BWPH September 21, 2022 Supplemental Information.

the findings specified in sections 121.7(e)(i) and (ii).  Accordingly, the state's conclusion here that the applicant has not provided enough information satisfied section 121.7(e)(1).

19.    We recognize that a state's decision to wait to issue water quality certification until other agencies have issued documents such as the Commission's EIS and NMFS's BO could lead to recursive situations where one agency's action could cause another agency to revise its work (for example, the conditions in a water quality certification could require the Commission to revise its environmental document, which then could require a reinitiation of ESA consultation, which in turn might cause a state to revise its certification).  While this possibility, and the question of the order in which agencies should or must act, could lead to further delays, we lack authority here to do more than determine whether the state has satisfied the procedural requirements of EPA's regulations.

20.    For these reasons, we find that Maine DEP's denial of BWPH's certification application satisfied the requirements of section 121.7(e)(1).

### B.    Explanation Is Provided for the Commission's Determination, but the Commissions Was Not Required to Provide a Substantive Evaluation of Maine DEP's Denial

21.    BWPH also argues that the Commission erred by failing to provide the basis for its determination.[42]  Because the Commission explains here why Maine DEP's denial of BWPH's certification satisfied the requirements of section 121.7(e)(1), we dismiss BWPH's argument as moot.

22.    Brookfield also argues that the Commission was required to undertake a substantive evaluation of Maine DEP's denial;[43] we disagree.  BWPH avers that, at the very least, the Commission should have acknowledged BWPH's November 7, 2022 request for a Commission determination that Maine DEP's denial fails to satisfy section 121.7(e)(1).[44]  As previously provided, section 121.8(b) of EPA's certification regulations requires the Commission to verify that a certification denial includes the specific information required in section 121.7(e)(1).[45]  If the denial satisfies the

---

[42] Rehearing Request at 12.

[43] *See id.* at 13 ("The Commission's *substantive* evaluation of a denial is a critical step in the relicensing process, as it dictates whether the certification requirement is waived.") (emphasis added).

[44] *Id.* at 13.

[45] 40 C.F.R. § 121.8(b).

requirements of section 121.7(e)(1), the Commission must provide written notice of the denial to the certifying authority and the applicant.[46]  Otherwise, the certifying authority has waived certification and the Commission must issue a notice of waiver of the certification.[47]

23.    Contrary to BWPH's assertion, the Commission's review under section 121.8(b) is not substantive, but "entirely procedural in nature."[48]  According to EPA, "the final rule does not require the federal agency to make a substantive inquiry into the sufficiency of the information provided in support of a certification, condition, or a denial"[49] and thus the Commission may not assess the validity of the state certifying agency's response.  Instead, the federal agency's review is a check-the-box exercise that is limited to determining whether the certification action was taken in accordance with procedural requirements and whether the action includes all the required information.[50]

24.    BWPH cites to *City of Tacoma v. FERC*[51] to argue that the Commission's role in evaluating a state's compliance with the CWA is significant.[52]  However, in  that case, the court of appeals found only that the CWA "require[d] FERC at least to confirm that the state has facially satisfied the express [procedural] requirements of section 401."[53]  The Secretary's Notice provided written notice that Maine DEP denied certification and that the denial satisfied the requirements of section 121.7(e)(1).  In so doing, the Notice satisfied the requirements of section 121.8(b) to verify and to provide written notice that the denial satisfied the procedural requirements of section 121.7(e)(1).

---

[46] *Id.*

[47] *Id.*

[48] 85 Fed. Reg. at 42,267.

[49] *Id.* at 42,268.

[50] *Id.* at 42,267-68.

[51] 460 F.3d 53, 67-68 (D.C. Cir. 2006).

[52] Rehearing Request at 12.

[53] *City of Tacoma*, 460 F.3d at 67-68; *see also* 85 Fed. Reg. at 42,223 (finding the court in *Tacoma* "concluded that [the Commission] has an affirmative obligation to determine whether a certifying authority has complied with the requirements related to a section 401 certification").

25.      Nothing in section 121.8(b) requires, as BWPH claims, that the Commission provide explanation or acknowledge or address BWPH's November 7, 2022 comments. Given that EPA has limited licensing and permitting agencies to "checking the box," discussion of substantive arguments about a state's action are outside the scope of an initial determination of compliance with EPA's regulations.  However, BWPH has had the opportunity to seek rehearing of the Notice and to file an appeal of the denial in state court, the appropriate venue for such an action.  In sum, we find that the Notice satisfies the requirements of section 121.8(b).

The Commission orders:

        In response to BWPH's request for rehearing, the Secretary's November 22, 2022 Notice is hereby modified and the result sustained, as discussed in the body of this order.

By the Commission.  Commissioner Danly is dissenting with a separate statement
                              attached.

( S E A L )


                                        Kimberly D. Bose,
                                          Secretary.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Brookfield White Pine Hydro LLC                    Project No.       2322-073

(Issued March 17, 2023)

DANLY, Commissioner, *dissenting*:

1.       Today's decision[1] runs afoul of the Clean Water Act (CWA)[2] and the
Administrative Procedure Act (APA).[3]  I therefore dissent.

2.       At issue is whether the Maine Department of Environmental Protection (Maine
DEP) waived its right to issue a water quality certification under CWA section 401.
Specifically, the question presented is whether the Maine DEP's denial of Brookfield
White Pine Hydro LLC's (Brookfield) request for a water quality certification complied
with CWA regulations.  The Commission's review of actions on water quality
certification requests is narrow—it is limited to "facially review[ing]"[4] certification
issuances and denials to determine whether they comply with the procedural
requirements of section 401 and implementing regulations.[5]  In this case, if the issuance
complies, the request is denied; if not, the state's right has been waived.[6]

3.       CWA regulations require denial of a water quality certifications to include:

> (i) [t]he specific water quality requirements with which the
> discharge will not comply; (ii) [a] statement explaining why
> the discharge will not comply with the identified water
> quality requirements; *and* (iii) [i]f the denial is due to

---

[1] *Brookfield White Pine Hydro LLC*, 182 FERC ¶ 61,169 (2023) (*Brookfield*).

[2] 33 U.S.C. § 1341(a)(1).

[3] 5 U.S.C. § 706.

[4] 85 Fed. Reg. 42,210, 42,266 (July 13, 2020).

[5] 85 Fed. Reg. at 42,267.  *See also City of Tacoma v. FERC*, 460 F.3d 53, 68 (D.C.
Cir. 2006) (stating that the CWA requires that the Commission "at least to confirm that
the state has facially satisfied the express requirements of section 401").

[6] 40 C.F.R. §§ 121.8-121.9.

> insufficient information, the denial must describe the specific
> water quality data or information, if any, that would be
> needed to assure that the discharge from the proposed project
> will comply with water quality requirements.[7]

4.    At a minimum, a facial review of Maine DEP's certification denial shows that Maine DEP failed to include two of the three required elements listed in section 121.7(e). Maine DEP failed requirement 1 when it declined to identify "specific water quality requirements with which the discharge will not comply"[8] and failed requirement 2 when it chose not to include "[a] statement explaining why the discharge will not comply with the identified water quality requirements."[9]  CWA's regulations state that "[t]he certification requirement for a license . . . shall be waived upon . . . [f]ailure or refusal to satisfy the requirements of § 121.7(e)"[10] and direct the federal agency issuing the license, in this case the Commission, to "provide written notice . . . that waiver of the certification requirement . . . has occurred."[11]

5.    Predictably, my colleagues do not like this outcome.  Instead of finding waiver, they resort to interpreting the regulation to mean that, "by providing the information specified in section 121.7(e)(1)(iii), i.e., identifying the water quality data or information needed to assure the project will comply with water quality requirements, complies with

---

[7] *Id.* § 121.7(e)(1)(i)-(iii) (emphasis added).

[8] *Id.* § 121.7(e)(1)(i).  The majority appears to imply that Maine DEP identified "specific water quality requirements with which the discharge will not comply," when it states that "Maine DEP's denial incorporates by reference its August 11, 2021 draft denial of certification, which provides further details regarding . . . [Brookfield's] ability to meet state water quality standards."  *Brookfield*, 182 FERC ¶ 61,165 at P 17 n.40. However, that statement is false.  Maine DEP only "note[d] and [found] the following background facts with respect to prior [water quality certification] efforts:  Brookfield previously filed an application . . . but withdrew that request . . . following [Maine DEP's] issuance of a draft denial . . . ."  Maine DEP October 12, 2022 Certification Denial at 1 n.1.  Noting background facts is not an incorporation of reference of any rationales for denying previously filed and withdrawn water quality certification applications.

[9] 40 C.F.R. § 121.7(e)(1)(ii).

[10] *Id.* § 121.9(a)(2)(iii).

[11] *Id.* § 121.9(c); *see also* 85 Fed. Reg. at 42,267 ("[i]f certification denials do not include [the] three elements [listed in section 121.7(e)], the certifying agency has 'fail[ed] or refuse[d] to act'" . . . and therefore has waived certification.").

section 121.7(e)(1)(i) and (ii)."[12]  This must be wrong.  Nothing in the regulation or its preamble states (or even implies) that by meeting the third element alone, the certifying agency has successfully met the first two.  In fact, the preamble to the CWA regulations states again and again that *all* three elements must be included in a certification denial in order to comply with section 121.7(e):

- "Consistent with the proposal, the final rule requires certification denials . . . to include *three elements* to support certification denials."[13]

- "The [Environmental Protection Agency (EPA)] is finalizing the requirement that a certification denial . . . include *three elements* to support the denial."[14]

- "[F]ederal agencies are required to determine whether certification denials include the *three elements* listed in section 121.7(e)."[15]

- "If certification denials do not include these *three elements*, the certifying authority has 'fail[ed] or refuse[d] to act' . . . and therefore has waived certification."[16]

There can be no confusion regarding the EPA's meaning.[17]

6.     But my colleagues pay no mind to the EPA's statements.  Instead, they declare that their interpretation is necessary for the regulation because "[i]n the absence of

---

[12] *Brookfield*, 182 FERC ¶ 61,169 at P 16 (citation omitted).

[13] 85 Fed. Reg. at 42,265 (emphasis added).

[14] *Id.* (emphasis added).

[15] *Id.* at 42,267 (emphasis added).

[16] *Id.* (emphasis added).

[17] It should also be recognized that the preamble stated that the "final rule provisions retain the same meaning as the proposed provisions."  *Id.* at 42,263.  The proposed provisions stated, "the EPA is proposing that the written notification include the reasons for denial, including the specific water quality requirements with which the proposed federally licensed or permitted project will not comply, a statement explaining why the proposed project will not comply with the identified water quality requirements, and the specific data, information, or project modifications, if any, that would be needed for the certifying authority to determine that the discharge will comply with water quality requirements."  84 Fed. Reg. 44,080, at 44,111 (Aug. 22, 2019).

information providing details about the project proposal, it would not be possible for an agency to determine which, if any, water quality requirements the discharge will not comply with or to provide an explanation of how the discharge will not comply."[18] Citing to absurdity doctrine cases,[19] my colleagues argue that they may interpret the regulation in a manner that "make[s] sense."[20]

7.       However, one cannot rely on the absurdity doctrine simply because one finds the outcome objectionable.  Courts have held that "to justify a departure from the letter of a statute because of its spirit and policy, the absurdity following from the literal application of its words must not only 'be so gross as to shock the general moral or common sense', but also 'there must something to make plain the intent of Congress that the letter of the statute is not to prevail.'"[21]

8.       That rare circumstance does not exist here.  The intent of the CWA regulations is clear:  all three elements must be included in certification denials.[22]  The EPA found these requirements necessary to "promote transparency and to help assure that certifying authorities understand and consider the appropriate scope of information when . . . issuing a denial."[23]  While the CWA regulations allow denials based on insufficient information,[24] the regulations sought to discourage certifying agency's use of

---

[18] *Brookfield*, 182 FERC ¶ 61,169 at P 18.

[19] *Id.* P 15 n.38 (citing *Posey v. Heckler*, 812 F.2d 1408, at *3 (6th Cir. 1987); *cf. Griffin v. Oceanic Contractors*, 458 U.S. 564, 575 (1982)).

[20] *Id.* P 15.

[21] *Porter v. Nowak*, 157 F.2d 824, 826 (1st Cir. 1946) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)).  Likewise, while in some instances "and" should be read disjunctively rather than in its ordinary conjunctive sense, that is only in the case "where strict grammatical construction will frustrate clear legislative intent."  *Bruce v. First Fed. Sav. & Loan Ass'n of Conroe, Inc.*, 837 F.2d 712, 715 (5th Cir. 1988) (footnote omitted).

[22] *Supra* P 5.

[23] 85 Fed. Reg. at 42,256; *id.* ("These requirements are intended to increase transparency and ensure that any limitation or requirement added to a certification, and any denial, is within the scope of certification."); *id.* at 42,265 ("The required elements will lead to more transparent decision-making and a more complete record of the administrative action.").

[24] *Id.* ("the final rule reaffirms and clarifies that insufficient information about the

that rationale:  "the final rule includes a number of provisions that should reduce the need for certifying authorities to deny certification based on insufficient information."[25]  The majority's reading would encourage the use of the rationale without effective restraint or transparency.  It would be hard to claim that either the EPA's deliberate policy decision to limit the number of denials based on insufficient data or its desire to promote transparency are "absurdities" liable to "shock the general moral or common sense."

9.      Moreover, the majority advances the dubious claim that "[i]n the absence of information proving details about the project proposal, it would not be possible" for Maine DEP to satisfy the first two elements.  Why doubt such a declaration?  Consider Maine DEP's regulations regarding Class AA waters populated by Atlantic salmon:

> the applicant, prior to issuance of a discharge license, [must] objectively demonstrate[] to the department's satisfaction that the discharge is necessary, that there are no other reasonable alternatives available and that the discharged effluent is for the purpose of and will assist in the restoration of Atlantic salmon and will return the waters to a state is closer to historically natural chemical quality.[26]

If the discharge had been released into a Class AA water, which I understand is not the case here, could it be "not possible" for Maine DEP to state that a discharge would not comply with this requirement because in the "absence of [certain] information" the applicant failed to "objectively demonstrate" "there are no other reasonable alternatives available" or "that the discharged effluent . . . will assist in the restoration of Atlantic salmon"?  I think not.  And even if the effect of the regulations "turn out to be mischievous, absurd, or otherwise objectionable[,] . . . the remedy lies"[27] with the EPA,

---

proposed project can be a basis for a certification denial").

[25] *Id.* at 42,263.  It should also be recognized that the CWA regulations contemplate modifications to the proposed project during the certification request review period.  *See id.* at 42,247 ("minor changes to the proposed project, such as those that do not change the project footprint in a material way, should not warrant the submission of a new certification request").  The regulations also state that "'additional information' in the form of multi-year environmental investigations and studies . . . may not result in extending the period of time beyond which the CWA requires certifying authorities to act."  *Id.* at 42,265.

[26] 38 M.R.S. § 465(2)(C)(2).

[27] *Crooks v. Harrelson*, 282 U.S. at 60.

the authority delegated the responsibility to promulgate regulations implementing the CWA.

10.    My colleagues cannot avoid a literal reading of the CWA regulations.  Maine DEP's certification denial does not include all three elements of section 121.7(e) of the CWA regulations, meaning the Commission must find waiver.  Failure to comply with the CWA regulations is a violation of the CWA and the APA.

For these reasons, I respectfully dissent.


_____

James P. Danly
Commissioner

# Attachment D

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION


Brookfield White Pine Hydro LLC     )          Project No. 2322-069
                         )

REQUEST FOR REHEARING
OF BROOKFIELD WHITE PINE HYDRO LLC


       Pursuant to section 313(a) of the Federal Power Act ("FPA")[1] and Rule 713 of the Rules

of Practice and Procedure of the Federal Energy Regulatory Commission ("FERC" or

"Commission"),[2] Brookfield White Pine Hydro LLC ("BWPH"), licensee of the Shawmut

Hydroelectric Project ("Project"), Project No. 2322, hereby requests rehearing of the

Commission Secretary's November 22, 2022 "Notice of Denial of Water Quality Certification"

("Determination") concluding under 40 C.F.R. § 121.8(b) that the Maine Department of

Environmental Protection's ("Department") denial of BWPH's request for water quality

certification for relicensing the Project ("Denial") satisfies the requirements of 40 C.F.R. §

121.7(e).[3]  For the reasons set forth below, the Commission erred in concluding that the Denial

satisfied the requirements of 40 C.F.R. § 121.7(e) and in so concluding—without any analysis

and without any support in the record—the Commission failed to satisfy its obligations under

section 401 of the Clean Water Act ("CWA").[4]

---

[1]    16 U.S.C. § 825*l*(a) (2018).

[2]    18 C.F.R. § 385.213 (2021).

[3]    *Brookfield White Pine Hydro LLC*, Notice of Denial of Water Quality Certification, Project No. 2322-069 (issued Nov. 22, 2022) ("Determination").

[4]    33 U.S.C. § 1341(a).

# I.    BACKGROUND

## A.    Statutory and Regulatory Background

Pursuant to section 401 of the CWA, an applicant for a federal license which may result in a "discharge" into navigable waters is required to obtain a water quality certification from the state in which the discharge originates.[5]  The state certifying authority must act on the application for water quality certification within a reasonable time not to exceed one year, and the federal agency may not issue the license until the applicant obtains the water quality certification or the requirement to obtain the water quality certification has been waived.[6]

The Environmental Protection Agency ("EPA") issued a final rule updating and clarifying the substantive and procedural requirements for water quality certification under section 401 of the CWA in July 2020.[7]  The rule became effective on September 11, 2020.[8] Section 121.7(e) of the regulations promulgated by the Final Rule provides that:

> Any denial of certification shall be in writing and shall include:
> (1) For denial of certification for an individual license or permit,
>> i.    The specific water quality requirements with which the discharge will not comply;
>> ii.   A statement explaining why the discharge will not comply with the identified water quality requirements; and
>> iii.  If the denial is due to insufficient information, the denial must describe the specific water quality data or information, if any, that would be needed to assure that the discharge from the proposed project will comply with water quality requirements.[9]

---

[5]    *Id.* § 1341(a)(1).

[6]    *Id.*

[7]    Environmental Protection Agency, Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42210 (July 13, 2020) ("Final Rule").

[8]    The Final Rule was vacated by the U.S. District Court for the Northern District of California on October 21, 2021.  However, the U.S. Supreme Court issued a stay of the vacatur on April 6, 2022, so the Final Rule is currently in effect.

[9]    40 C.F.R. § 121.7(e)(1).

The point of this provision is, as explained by the EPA, to ensure "more transparent decision-making and a more complete record of the administrative action."[10] A state certifying authority must include these details in a denial to ensure a project proponent understands "what may be necessary to obtain a certification should the project proponent submit a new certification request in the future."[11]

The regulations further provide, under section 121.8(b), that the federal agency issuing a license must determine whether a state certifying authority's denial satisfies the requirements of section 121.7(e).[12] If a denial satisfies the requirements of section 121.7(e), the federal agency must provide written notice of the determination to the certifying authority and project proponent.[13] Under section 121.9(a)(2)(iii), "[t]he certification requirement for a license or permit shall be waived upon: … Failure or refusal to satisfy the requirements of § 121.7(e)."[14] The EPA explains in the preamble to the rule that "[u]nder the final rule, federal agencies are required to determine whether certification denials include the three elements listed in section 121.7(e). If certification denials do not include these three elements, the certifying authority has failed or refused to act … and therefore has waived certification."[15] In that instance, the federal agency must provide written notice to the EPA Administrator, the certifying authority, and the

---

[10] Final Rule, 85 Fed. Reg. at 42265.

[11] *Id.*

[12] 40 C.F.R. § 121.8(b).

[13] *Id.* The Commission has issued such notices in only two other proceedings. *See Lower Saranac Hydro, LLC*, Notice of Denial of Water Quality Certification, Project No. 3511-024 (issued June 28, 2022); *City of Watervliet*, Notice of Denial of Water Quality Certification, Project No. 2955-011 (issued July 20, 2022). Neither applicant challenged the Commission's determination.

[14] 40 C.F.R. § 121.9(a)(2)(iii).

[15] Final Rule, 85 Fed. Reg. at 42267 (internal quotations omitted).

project proponent that waiver of the certification requirement has occurred.[16]  The federal

agency's written notice of waiver satisfies the applicant's requirement to obtain water quality

certification.[17]

> **B.      Factual Background**

The Project is located on the lower Kennebec River in Maine.  The Commission issued

the current license for the Project on January 5, 1981,[18] and BWPH is seeking a new license to

continue operating the Project for a new license term.[19]  Pursuant to the statutory scheme under

the CWA outlined above, BWPH must obtain a water quality certification from the Department

for the discharge originating from the Project before the Commission can issue a new license for

the Project under the FPA, unless the certification requirement is waived.[20]  BWPH filed an

application for water quality certification ("Application") with the Department on October 18,

2021.[21]

The Department denied the Application without prejudice on October 12, 2022.[22]  The

Denial expressly states that it was not based on a judgment of the technical merits of BWPH's

---

[16]    40 C.F.R. § 121.9(c).

[17]    *Id.* § 121.9(d).

[18]    *Central Maine Power Company*, 14 FERC ¶ 62,004 (1981).

[19]    The current license expired on January 31, 2022, and BWPH is operating the Project pursuant to an annual license until FERC issues a new license.  *Brookfield White Pine Hydro LLC*, Notice of Authorization for Continued Project Operation, Project No. 2322-000 (issued Feb. 10, 2022).

[20]    33 U.S.C. § 1341(a)(1).

[21]    BWPH filed an initial water quality certification application with the Department on August 28, 2020. BWPH withdrew that application on August 18, 2021.

[22]    The Department filed a copy of the Denial with the Commission on the same day.  State of Maine Department of Environmental Protection Order on Water Quality Certification Application, Project No. 2322-069 (filed Oct. 12, 2022).

Application,[23] and it did not reference any applicable state water quality requirements. Rather, the Denial found that BWPH's Application "(1) lacks sufficient documentation for the Department to meaningfully process it at this stage; and (2) is in the process of undergoing or being evaluated for potentially material changes since the application was initially filed."[24] Although the Denial referenced ongoing federal processes, it did not describe the specific water quality data or information necessary to assure that the discharge from the Project will comply with state water quality requirements, nor did it describe the state water quality requirements that BWPH's Application failed to satisfy.

Following the Denial, on November 7, 2022, BWPH filed a request for the Commission to determine that: (1) the Denial did not satisfy the requirements of section 121.7(e) of the EPA's regulations; and (2) under section 121.9(a)(2)(iii), the certification requirement for the Project is therefore waived ("Determination Request").[25] Fifteen days later, the Secretary of the Commission issued the Determination, a one-paragraph issuance that stated in its entirety:

> On January 31, 2020, Brookfield White Pine Hydro LLC (Brookfield) filed an application for a new license for the Shawmut Hydroelectric Project (project) in the above captioned docket. Brookfield filed with the Maine Department of Environmental Protection (Maine DEP) a request for water quality certification for the project under section 401(a)(1) of the [CWA] on October 18, 2021. On October 12, 2022, the Maine DEP denied certification for the project. Pursuant to 40 C.F.R. § 121.8, we are providing notice that Maine DEP's denial satisfies the requirements of 40 C.F.R. § 121.7(e).[26]

---

[23]   Denial at 4. BWPH is not, in this request for rehearing, contesting any substantive or procedural aspects of the Denial other than the Commission's review of the Department's compliance with section 121.7(e) of the EPA's regulations. BWPH reserves its right to challenge any other aspect of the Denial in any appropriate forum.

[24]   *Id*.

[25]   Brookfield White Pine Hydro LLC, Request for Determination on Denial of Water Quality Certification, Project No. 2322-069 (filed Nov. 7, 2022).

[26]   Determination.

That was all.  The Determination did not include any analysis of the Denial's compliance with the three required elements of section 121.7(e), and it did not include any explanation of its conclusion that the Denial satisfied the requirements.  Nor did the Determination address or even acknowledge BWPH's Determination Request.

In conjunction with the Determination, Commission staff issued a letter to BWPH (the "Letter") informing it that, in accordance with the Commission's policy in *Swift River Company*, when a water quality certification is denied, it may dismiss the license application 90 days after the denial.[27]  The Letter further stated that if the applicant notifies the Commission that it has filed an appeal of the denial and/or re-filed its water quality certification request with the certifying agency, the Commission will keep the license application on file.[28]  Accordingly, the Letter required BWPH to "promptly notify the Commission whether it has, within the 90-day period (by January 10, 2023) filed a timely appeal of the denial of WQC with Maine DEP, or has refiled its certification request."[29]  The Letter did not address or even acknowledge BWPH's Determination Request or the Commission's Determination.

## II.    STATUS OF DETERMINATION AS FINAL ORDER

The Determination is either a valid final order of the Secretary made pursuant to authority delegated to her by the Commission, or it is invalid because the Commission has never authorized the Secretary to make determinations under 40 C.F.R. § 121.8(b).  Either way, BWPH has a right to rehearing before the Commission.

---

[27]    Letter from Vince Yearick, FERC, to Randy Dorman, BWPH, regarding Water Quality Certification for the Shawmut Hydroelectric Project, Project No. 2322-069 (issued Nov. 22, 2022) ("Letter").

[28]    Letter at 2.

[29]    *Id.*

Section 121.8(b) of the CWA regulations require the relevant "federal agency" to "determine[] that a certifying authority's denial satisfies the requirements of § 121.7(e)."[30]  A "federal agency" is defined in those regulations as "any agency of the Federal Government to which application is made for a license or permit that is subject to Clean Water Act section 401."[31]  Here, the Commission is the "federal agency" that is required to determine whether the Denial satisfies the requirements of § 121.7(e).

The Commission could, of course, delegate the authority to make determinations under section 121.7(e) to the Secretary,[32] but it has not done so.[33]  If the Commission allows the Secretary's Determination to stand without undertaking a thorough and independent review of the Denial, this will amount to an abuse of discretion.  An administrative agency may not allow delegated staff "to act beyond the scope of authority delegated."[34]  Because it has not delegated this authority to the Secretary, the Commission must itself determine whether the Denial meets the strictures of the CWA regulations.

BWPH also would have a right to seek rehearing even if the Commission had delegated the authority to the Secretary to determine whether the Denial satisfies section 121.7(e).  Rule 1902 provides that "[a]ny staff action…taken pursuant to authority delegated to the staff by the Commission is a final agency action that is subject to a request for rehearing."[35]  The Determination, if it had been validly delegated, is a final action for which rehearing lies.

---

[30]  40 C.F.R. § 121.8(b).

[31]  Final Rule, 85 Fed. Reg. at 42285, 40 C.F.R. § 121.1(g).

[32]  *See* 16 U.S.C. § 793 (giving FERC the "authority to…prescribe the duties…of a secretary").

[33]  *See* 18 C.F.R. § 375.302 (listing the actions the Commission has delegated to the Secretary).

[34]  *See Gulf South Pipeline Co. v. FERC*, 876 F.2d 431, 433 (5th Cir. 1989) ("Abuse of discretion in an administrative law setting involving the delegation of powers by the administrative agency occurs when that agency…has allowed the delegated person…to act beyond the scope of authority delegated").

[35]  18 C.F.R. § 385.1902(a).

In addition, the Determination—if valid—is also subject to rehearing as an order issued as part of the FPA relicensing proceeding.  Section 825*l* of the FPA provides that "[a]ny person … aggrieved by an order issued by the Commission … may apply for a rehearing."[36]  BWPH is aggrieved by the Determination because the Determination "imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative process."[37]  Specifically, the Determination obligates BWPH to appeal the Denial in state court and, if that appeal is unsuccessful, reapply for water quality certification from the Department.[38]  In this way, the Determination also denies BWPH the right—conferred by the CWA regulations—to know the reasons for the Denial and to understand "what may be necessary to obtain a certification should [BWPH] submit a new certification request in the future."[39]  Finally, the Determination also denies BWPH the right—again, conferred by the CWA regulations—to bypass state certification altogether in light of the Denial's failure to include the required information.[40]

BWPH also has no practical means of obtaining relief from the harm caused by the Determination other than seeking rehearing.  Unlike delegated actions that are interlocutory or concern preliminary or procedural matters to be finally decided later in the process,[41] this is the only opportunity in the relicensing process for the Commission to evaluate whether the Denial satisfies the section 121.7(e) criteria and whether, pursuant to section 121.9(a)(2)(iii), the

---

[36]   16 U.S.C. § 825*l*(a).

[37]   *City of Fremont v. FERC*, 336 F.3d 910, 914 (9th Cir. 2003).

[38]   Letter at 2.

[39]   Final Rule, 85 Fed. Reg. at 42265

[40]   40 C.F.R. § 121.9(a)(2)(iii).

[41]   *Sheep Creek Irrigation Co.*, 23 FERC ¶ 61,351 at p. 61,761 (1983) (citing *FPC v. Metropolitan Edison Co.*, 304 U.S. 375 (1938) (noting that an action is not subject to review if it concerns preliminary or procedural matters).

requirement to obtain certification is waived.  It is also BWPH's only opportunity to challenge the Denial's satisfaction of section 121.7(e).  The Determination and corresponding Letter dictate the course of BWPH's next steps in the relicensing process and BWPH has no practical means of obtaining relief with respect to the Determination at any subsequent part of the relicensing process.  The Determination is therefore a final action subject to rehearing.

## III.    SPECIFICATION OF ERROR

In accordance with Rule 713(c)(1), which requires a request for rehearing to concisely state the alleged error in the final decision or final order, BWPH states that the Commission erred in determining that the Denial satisfied the requirements of section 121.7(e) of the CWA regulations and in so concluding—without any analysis and with no support in the record—the Commission abdicated its responsibility under the CWA.  As set forth in more detail below, the Determination was arbitrary and capricious because it was not supported by substantial evidence and the Commission failed to explain the rationale for its conclusion that the Denial satisfied the requirements of 121.7(e).

## IV.    STATEMENT OF ISSUES

BWPH submits the following statement of issues with supporting authorities, pursuant to Rule 713(c)(2):

A.    Whether the Determination was arbitrary and capricious under the Administrative Procedure Act ("APA") because it was not supported by substantial evidence in the record.  5 U.S.C. § 706(2)(A); *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1068 (9th Cir. 2018); *North Carolina v. FERC*, 112 F.3d 1175, 1189 (D.C. Cir. 1997); *Bangor Hydro-Electric Co. v. FERC*, 78 F.3d 659, 663 & n.3 (D.C. Cir. 1996)).

B.      Whether the Commission abdicated its responsibility under the CWA by failing to analyze whether the Denial satisfied the requirements of section 121.7(e) of the CWA regulations.  40 C.F.R. §§ 121.7(e), 121.8(b); *City of Tacoma v. FERC*, 460 F.3d 53, 67-68 (D.C. Cir. 2006); *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 971 (D.C. Cir. 2011).

## V.      REQUEST FOR REHEARING

### A.      The Commission Erred in Concluding that the Denial Satisfied the Requirements of Section 121.7(e) of the CWA Regulations.

The Denial did not satisfy the requirements of section 121.7(e) of the EPA's regulations. As BWPH detailed in its Request for Determination, the Denial did not include any of the three elements required by section 121.7(e).  First, the Denial did not indicate "the specific water quality requirements with which the discharge will not comply," as required by 40 C.F.R. § 121.7(e)(1)(i).  Indeed, the Denial did not cite to any specific Maine water quality requirements or identify any specific provision of state law that BWPH's Application failed to satisfy.

Second, the Denial did not include "a statement explaining why the discharge will not comply with the identified water quality requirements," as required by 40 C.F.R. § 121.7(e)(1)(ii).  Because the Denial did not identify any water quality requirements with which BWPH's Application failed to comply, it necessarily did not explain why the discharge would not comply with Maine's water quality requirements.

The Denial further did not describe "the specific water quality data or information, if any, that would be needed to assure that the discharge from the proposed project will comply with water quality requirements," as required by 40 C.F.R. § 121.7(e)(1)(iii).  Though the Denial found that BWPH's Application "lacks sufficient documentation," it did not identify what specific water quality data or information was missing, nor did it explain how any purportedly missing information would be used to determine attainment.

The Department has attempted to retroactively make the Denial comply with section 121.7(e) by filing additional information with the Commission on December 5, 2022—well outside of the one-year period for acting on the Application—that, the Department says, provides "further detail with respect to the Denial and the Department's rationale."[42]  This attempt is ineffective for several reasons.  First, the effort to "incorporate by reference" the Department's draft denial of a materially different application by BWPH in an earlier proceeding is irrelevant to whether the Denial in this proceeding meets the requirements of CWA regulations.  Moreover, the Commission does not allow parties to incorporate by reference arguments or rationale from prior pleadings, because such incorporation "fails to inform the Commission as to which arguments from the referenced pleading are relevant and how they are relevant."[43]  And perhaps most importantly, even with the "further detail" in the December 5 letter, the Denial still does not meet the requirements of section 121.7(e) of the CWA regulations, regardless.

Because the Denial did not meet any of the three requirements of section 121.7(e), the Commission's Determination that the Denial satisfied the requirements of section 121.7(e) was wholly unsupported and completely contrary to the evidence provided in the Determination Request filed into the record by BWPH.   A decision unsupported by substantial evidence is arbitrary and capricious under the APA and must be reversed.[44]

---

[42]   *See* Letter from Kyle Olcott, Maine Department of Environmental Protection, to Kimberley [sic] Bose, FERC, Project No. 2322-069 (filed Dec. 5, 2022).

[43]   *Town of Rollinsford, N.H.*, 180 FERC ¶ 61,176 at P 13 (2022) (citing *Jordan Cove Energy Project L.P.*, 171 FERC ¶ 61,136 at PP 15, 17 (2020); *San Diego Gas & Elec. Co. v. Sellers of Mkt. Energy*, 127 FERC ¶ 61,269 at P 295 (2009)).

[44]   5 U.S.C. § 706(2)(A); *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1068 (9th Cir. 2018); *North Carolina v. FERC*, 112 F.3d at 1189 (citing *Bangor Hydro-Electric Co. v. FERC*, 78 F.3d 659, 663 & n.3 (D.C. Cir. 1996)).

**B.      The Commission's Determination Did Not Satisfy Its Obligation Under the CWA.**

The Commission also failed to explain the basis for its decision.  Under the articulated standard of the APA, the Commission must show that it has "examined the relevant data and provided a 'reasoned explanation supported by a stated connection between the facts found and the choice made.'"[45]  In issuing the one paragraph Determination—which included a single conclusory sentence regarding the Denial's satisfaction of the requirements of 40 C.F.R. § 121.7(e)—the Commission failed to fulfill this standard.  In fact, the Commission failed to provide *any* explanation of its conclusion that the Denial fulfilled the three elements of section 121.7(e).  The Determination therefore also failed to satisfy the directive of the CWA regulations, which require the federal agency to "determine whether certification denials include the three elements listed in section 121.7(e),"[46] and if they do not, provide written notice to the EPA Administrator, certifying authority, and project proponent that waiver of the certification requirement has occurred.[47]

The Commission has a significant role in evaluating a state's compliance with the CWA.  As the D.C. Circuit explained in *City of Tacoma v. FERC*, the "obligation does not require FERC to inquire into every nuance of the state law proceeding, especially to the extent doing so would place FERC in the position of applying state law standards, but it does require FERC at least to confirm that the state has facially satisfied the express requirements of section 401."[48]  The CWA regulations make clear that this affirmative obligation is true for both water quality

---

[45]   *North Carolina v. FERC*, 112 F.3d at 1189 (citing *Dep't of Interior v. FERC*, 952 F.2d 538, 543 (D.C. Cir. 1992)).

[46]   Final Rule, 85 Fed. Reg. at 42267; 40 C.F.R. § 121.8(b).

[47]   40 C.F.R. § 121.9(c).

[48]   *City of Tacoma,* 460 F.3d at 67-68; *see also Alcoa Power Generating Inc. v. FERC*, 643 F.3d at 971.

certifications and denials of water quality certifications.[49]  The Commission's substantive evaluation of a denial is a critical step in the relicensing process, as it dictates whether the certification requirement is waived.[50]

By issuing a cursory, pro forma notice with no supporting evidence or rationale, one that failed to evaluate or even acknowledge the arguments BWPH advanced in its Determination Request, the Commission abdicated its responsibility under the CWA.

## V.    CONCLUSION

The Commission erred in determining that the Denial satisfied the requirements of section 121.7(e) of the CWA regulations and its Determination failed to satisfy its obligations under the CWA.  Accordingly, for the foregoing reasons, the Commission should grant rehearing of the Determination and find that the Denial did not satisfy the requirements of section 121.7(e), and as a result, that the requirement to obtain a water quality certification for the Project is waived.

Respectfully submitted,

_Julia S. Wood_

Julia Wood
Sharon White
Rock Creek Energy Group, LLP
1 Thomas Circle NW, Suite 700
Washington, DC  20005
Tel: (202) 998-2770
jwood@rockcreekenergygroup.com
swhite@rockcreekenergygroup.com

Counsel for Brookfield White Pine Hydro LLC

December 16, 2022

---

[49]    Final Rule, 85 Fed. Reg. at 42266.

[50]    40 C.F.R. §§ 121.8(b), 121.9(a)(2)(iii).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused to be served the foregoing document upon

each person designated on the official service list compiled by the Secretary in this docket.

Dated at Washington, D.C. this 16th day of December, 2022.


         */s/ Christopher Todd*
         Christopher Todd
         Rock Creek Energy Group, LLP
         1 Thomas Circle NW, Suite 700
         Washington, DC  20005
         Tel: (202) 998-2770
         ctodd@rockcreekenergygroup.com

# Attachment E

FERC Online - Web Applications of the Federal Energy Regulatory Commission



FERC Online Home

**About FERC Online**

Log Out

Edit Registration

**Company Registration**

eFiling

eSubscription

eComment

Query Mailing
List/Recipients by State

Query Service List

My Service List

My Filing List

eLibrary

**eTariff Viewer**

**Help**

Service List for P-2322-000 KENNEBEC HYDRO RESOURCES

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| American Rivers | RONALD KREISMAN<br>Attorney<br>Kreisman, Ronald A.<br>77 MACKWORTH STREET<br>PORTLAND, MAINE 04103<br>UNITED STATES<br>ron@kreisman.net | |
| Atlantic Salmon Federation | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| Atlantic Salmon Federation | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| Atlantic Salmon Federation | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| Atlantic Salmon Federation | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| BOYENS, JOHN | | **ALAN J BLOTT<br>BOYENS, JOHN<br>3472 W Britton Rd<br>Burbank, OHIO 442149755<br>Wayne |
| Brookfield White Pine Hydro LLC | | Thomas C Orvald<br>Senior FERC Counsel<br>Brookfield White Pine Hydro LLC<br>801 PENNSYLVANIA AVE NW STE 220<br>WASHINGTON, DISTRICT OF COLUMBIA<br>thomas.orvald@fpl.com |
| Brookfield White Pine Hydro LLC | Randy Dorman<br>Licensing Specialist<br>Brookfield White Pine Hydro LLC<br>150 MAIN ST<br>LEWISTON, MAINE 04240<br>UNITED STATES<br>randy.dorman@brookfieldrenewable.com | |
| Brookfield White Pine Hydro LLC | Kelly Maloney<br>Manager, Licensing and Complia<br>150 Main Street<br>Lewiston, MAINE 04240<br>UNITED STATES<br>kelly.maloney@brookfieldrenewable.com | Kevin Bernier<br>1024 Central Street<br>Millinocket, MAINE 04462<br>kevin.bernier@brookfieldrenewable.com |
| Conservation Law Foundation | | **Carol Blasi<br>Contact/Addr No Longer Valid<br>Conservation Law Foundation<br>Cumberland |
| Conservation Law Foundation | Sean Mahoney<br>Vice- President<br>53 Exchange st | Ruth Price<br>Office Manager<br>Conservation Law Foundation |

| | | |
|---|---|---|
| | Portland, MAINE 04101<br>UNITED STATES<br>smahoney@clf.org | 47 Portland St, Suite 4<br>Portland, MAINE 04101<br>rprice@clf.org |
| Friends of<br>Merrymeeting<br>Bay | Ed Friedman<br>Chair<br>Friends of Merrymeeting Bay<br>42 Stevens Rd.<br>Bowdoinham, MAINE 04008<br>UNITED STATES<br>edfomb@comcast.net | |
| Kennebec<br>Coalition | Russell Pierce<br>Norman Hanson & DeTroy, LLC<br>Two Canal Plaza<br>Portland, MAINE 04112-4600<br>UNITED STATES<br>rpierce@nhdlaw.com | |
| Kennebec<br>Coalition | Russell Pierce<br>Norman Hanson & DeTroy, LLC<br>Two Canal Plaza<br>Portland, MAINE 04112-4600<br>UNITED STATES<br>rpierce@nhdlaw.com | |
| KENNEBEC<br>COALITION (ME) | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| KENNEBEC<br>COALITION (ME) | Russell Pierce<br>Norman Hanson & DeTroy, LLC<br>Two Canal Plaza<br>Portland, MAINE 04112-4600<br>UNITED STATES<br>rpierce@nhdlaw.com | |
| Kennebec Valley<br>Chapter of Trout<br>Unlimited | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| Maine<br>Department of<br>Inland Fisheries & | | **LEE E PERRY<br>COMMISSIONER<br>Maine Department of Inland Fisheries &<br>284 State Street<br>Augusta, MAINE 04330<br>Kennebec |
| Maine<br>Department of<br>Inland Fisheries<br>and Wildlife | John Perry<br>Environmental Review Coordinat<br>Maine Department of Inland Fisheries and Wildlife<br>284 State Street<br>41 SHS<br>Augusta, MAINE 04333-0041<br>UNITED STATES<br>john.perry@maine.gov | |
| Maine<br>Department of<br>Inland Fisheries<br>and Wildlife | John Perry<br>Environmental Review Coordinat<br>Maine Department of Inland Fisheries and Wildlife<br>284 State Street<br>41 SHS<br>Augusta, MAINE 04333-0041<br>UNITED STATES<br>john.perry@maine.gov | |
| Maine<br>Department of<br>Marine Resources | | **Lewis N Flagg<br>Maine Department of Marine Resources<br>21 State House Sta<br>Augusta, MAINE 043330021<br>Kennebec |
| Maine Dept. of<br>Agriculture, Cons.<br>& Forestry | | **Kathleen Leyden<br>Dir., Maine Coastal Program<br>Maine Dept. of Agriculture, Cons. & Fore<br>Dept. of Agr., Conserv. & Forestry<br>93 State House Station<br>Augusta, MAINE 04333-0038 |
| National Marine<br>Fisheries Service | Jeffrey Murphy<br>Biologist | |

| | National Marine Fisheries Service<br>17 Godfrey Drive<br>Suite 1<br>Orono, MAINE 04473<br>UNITED STATES<br>Jeff.Murphy@noaa.gov | |
|---|---|---|
| National Marine Fisheries Service, Greater Atlantic Region | Christopher Boelke<br>New England Field Office Super<br>National Marine Fisheries Service, Greater Atlantic Region<br>55 GREAT REPUBLIC DR<br>GLOUCESTER, MASSACHUSETTS 01930<br>UNITED STATES<br>christopher.boelke@noaa.gov | Matt Buhyoff<br>National Marine Fisheries Service, Great Region<br>17 Godfrey Drive<br>Orono, MAINE 04473<br>Matt.Buhyoff@noaa.gov |
| National Marine Fisheries Service, Greater Atlantic Region | Julie Crocker<br>Supervisory Fisheries Biologis<br>INDIVIDUAL<br>55 Great Republic Dr<br>Gloucester, MASSACHUSETTS 01930-2298<br>UNITED STATES<br>julie.crocker@noaa.gov | Matt Buhyoff<br>National Marine Fisheries Service, Great Region<br>17 Godfrey Drive<br>Orono, MAINE 04473<br>Matt.Buhyoff@noaa.gov |
| Natural Resources Council of Maine | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| Natural Resources Council of Maine | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| Trout Unlimited | | **STEPHEN W BROOKE<br>Trout Unlimited<br>PO Box 53<br>Hallowell, 04347-0053<br>Kennebec |
| Trout Unlimited | charles verrill<br>Principal<br>9 MAGEAN ST<br>BRUNSWICK, MAINE 04011<br>UNITED STATES<br>CHARLESVERRILL@GMAIL.COM | |
| U.S. Department of Interior | | Andrew Tittler<br>Attorney-Advisor<br>U.S. Department of Interior<br>15 State St.<br>8th Floor<br>Boston, MASSACHUSETTS 02109-3502<br>DOISOLNE-FERC@sol.doi.gov |
| U.S. Department of Interior | **Amanda Bossie<br>Office of the Solicitor<br>U.S. Department of Interior<br>INC000000251348<br>Boston, MASSACHUSETTS 02109<br>UNITED STATES | |
| U.S. Department of the Interior | Andrew Tittler<br>Attorney-Advisor<br>U.S. Department of Interior<br>15 State St.<br>8th Floor<br>Boston, MASSACHUSETTS 02109-3502<br>UNITED STATES<br>DOISOLNE-FERC@sol.doi.gov | |
| U.S. Department of the Interior | Andrew Tittler<br>Attorney-Advisor<br>U.S. Department of Interior<br>15 State St.<br>8th Floor<br>Boston, MASSACHUSETTS 02109-3502<br>UNITED STATES<br>DOISOLNE-FERC@sol.doi.gov | |
| US Department of the Interior | Andrew Tittler<br>Attorney-Advisor | |

U.S. Department of Interior
15 State St.
8th Floor
Boston, MASSACHUSETTS 02109-3502
UNITED STATES
DOISOLNE-FERC@sol.doi.gov

Back to Query Service List    Back to FERCOnline

*Title 18, U.S.C. 1001 makes it a crime for any person knowingly and willingly to make to any Agency or Department of the United States fictitious or fraudulent statements as to any matter within its jurisdiction.*

FERC Online does not require the submission of personally identifiable Information (PII) (e.g. social security numbers, birthdates, and phone num
FERC will not be responsible for any PII submitted to FERC Online, including any accidental or inadvertent submissions of PII.

*This site contains information collections that are subject to the Paperwork Reduction Act (PRA). Among other things, the PRA requires FERC to p
with an estimate of the average burden of completing the information collections on this site. Comments regarding the burden estimate or any oth
these forms can be directed to FERC's Information Collection Branch at DataClearance@ferc.gov.*

*In addition, you are not required to respond to any collection of information unless it displays a currently valid Office of Management and Budget (
number. FERC provides the OMB Control Numbers of the information collections on this site at www.ferc.gov/information-collections.*

For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676. Please include a c
address, telephone number, and e-mail address.